Hastings *v.* Northampton Transit Co., Appellant.

Argued December 8, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Fox & Fox,* for appellant.

*Smith & Paff,* for appellee.

Opinion by Baldrige, J., January 30, 1931:

This action was started in the court below by John M. Hastings for injuries he received in a collision between his Ford sedan and defendant's trolley car. Hastings, who was 60 years of age, died prior to the trial and the pleadings were amended by substituting the present plaintiff. Verdict was rendered in favor of the plaintiff and the learned court below refused a motion for judgment for the defendant, n. o. v., and this appeal followed.

On the 23d of July, 1927, about six o'clock in the evening, the defendant's car was proceeding northward at a very moderate rate of speed, in the Borough of Stockertown. The motorman of the defendant company saw Hastings' car pass a parked car about 270 feet away and continue toward the oncoming trolley. When Hastings got within 150 feet of the trolley, the two left wheels of his car were on the trolley rails which were flush with the street and the remainder of the machine was to the right of the track. The plaintiff's witness, a passenger in the car, said that

he saw, at that distance, the wheels of the motor car "wobble" as the driver unsuccessfully endeavored to get out of the rails which were slippery owing to a recent rain. This witness said to the motorman when the trolley reached a point 25 to 30 feet from the motor car, "Man, why the Hell don't you stop the car and leave the man pass you?" The motorman admitted that he saw the automobile sliding along the rails and that he was watching and waiting for the driver to extricate his car, expecting him to get off the tracks at any minute. Instead of the motorman stopping the trolley car, which he said he could have done as it was under complete control, thus avoiding the accident, he continued going, and a collision resulted.

This case does not come under the principle laid down in Uhler v. Leh. Val. Transit Co., 93 Pa. Superior Ct. 262, cited by the appellant, where an automobile was driven on the track when a trolley was so near as to render a collision unavoidable. Hastings was within his rights in going on the tracks as they were on the public highway, and as he was a considerable distance from the trolley, no danger was imminent. The motorman was faced with a situation where it was his duty to exercise reasonable precaution to prevent injury to a person who, at that moment, was unable to extricate himself from an existing danger. Of course, if Hastings had the opportunity, and was able, to drive off the tracks, it was clearly his duty to do so as the trolley car had the superior right.

We recognize the principle that under ordinary circumstances an automobile in motion is presumed to be under control, but in the case at bar, the presumption was overcome as the motorman saw the ineffectual efforts made by the driver to divert his car from the trolley tracks. He, apparently, was just as helpless to extricate himself as the plaintiff in Friedland v. A. & L. V. E. Rwy., 59 Pa. Superior Ct. 539, who was driv-

ing a team and was prevented from getting off the tracks by other vehicles which obstructed the street; or as the plaintiff who was unable to control a frightened horse and drive off the tracks (Kulp v. Lehigh Valley Trans. Co., 81 Pa. Superior Ct. 296); or where the plaintiff could not drive his team from the tracks because of the deep snow, of which the motorman was fully aware: Trumbower v. Lehigh Valley Trans. Co., 235 Pa. 397.

In Hope v. Sou. Pa. Tract. Co., 270 Pa. 115, where a car sideswiped a wagon, Mr. Justice FRAZER, laying down the rule as to the duty of the motorman in such circumstances, said, "While the defendant's car was entitled to the right of way it was the duty of the motorman to exercise that right in such manner as to afford those driving close to or upon the railway reasonable opportunity to leave the track or remove a sufficient distance from it to avoid injury." See also Davis v. Elec. Rwy. Co., 25 Pa. Superior Ct. 444; Harper v. P. R. T., 258 Pa. 282.

In the case of Davidson v. Schuylkill Tract. Co., 4 Pa. Superior Ct. 86, where the motorman saw the ineffectual efforts of the plaintiff to get his horse and wagon off the track, Judge RICE, speaking for the court, said, "Negligence is always a question for the jury whenever there is a conflict of testimony, or for any cause there is a reasonable doubt as to the facts or as to the inferences to be drawn from them. If the motorman of the defendant company saw, or, in the exercise of due care, ought to have seen the plaintiff on the track and making ineffectual efforts to get off, and by slowing up his car could have avoided the collision, and failed to stop or slow up his car; ......then the question, whether the motorman exercised care according to the circumstances, was for the jury; it certainly was not for the court to declare that he did exercise such care." The appellant calls

attention that the element of speed was there involved as the motorman was going so rapidly that the car was beyond his control. But if the car could have been stopped, and the motorman failed to stop it, his want of care would only be emphasized.

We quite agree with the appellant that it was not incumbent upon the motorman to stop when he saw Hastings' car 270 feet away. He could properly have assumed that Hastings would turn off the tracks, but when Hastings was 25 to 30 feet away and the motorman saw that he was trying, and was unable, to get off the rail, a different situation confronted him.

The appellant calls our attention to Beaumont v. Beaver Val. Tract. Co., 298 Pa. 223, where one automobile was towing another and the front car succeeded in clearing the tracks but owing to the slippery condition of the rails, the rear car slid and collided with the oncoming trolley. Mr. Justice WALLING in that case said, "There is nothing to indicate that the Martin (rear) car would not have been dragged along the rail a further indefinite distance but for the collision. Had the street car been standing at the point of collision, the accident would have happened just the same; hence, its speed was not the proximate cause; ......but when one is stalled upon the track, or has not room to clear it, the motorman is put especially upon his guard...... There was nothing to warn the motorman of special danger until he could see the rear end of the Martin car coming over the rail; then he apparently did all he could to stop the trolley car and avoid the accident. Plaintiffs' evidence failed to prove the contrary." The court, therefore, held that there was no negligence upon the part of the defendant.

The negligence complained of in the case at bar is that the motorman failed to stop his car when it was within his power to do so. Whether or not this ac-

cident could have been avoided by exercising due care was, in our judgment, a question for the jury. Hastings went on the tracks when he was within his legal rights to do so and within a reasonable time after he saw the car approaching, he tried to discharge his duty of getting off the tracks. It could fairly be assumed that he momentarily expected to be successful. Whether or not, in the light of prevailing conditions, Hastings should have stopped and endeavored to signal the car was for the jury: Sieb v. Pa. Tract. Co., 47 Pa. Superior Ct. 228.

The learned court below very fairly and clearly submitted the questions involved to the jury, and a careful review of the record and a consideration of the arguments of able counsel lead us to the conclusion that the assignments of error are without merit.

Judgment is affirmed.